UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:10-cv-3573 |
| § | |
| SAFETY NATIONAL CASUALTY § | |
| CORPORATION and AAA BONDING § | |
| AGENCY, INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court are the parties' Cross Motions for Summary Judgment (Doc. Nos. 5, 27). After considering the parties' arguments and applicable law, the Court finds that the bonds for the following individuals should be **REMANDED** to the agency: William Antonio Gonzalez-Torres; Marcosalem De Oliveira; Gustavo Alvarado-Midence; Paulette Ann Marie McKane; Ana Griselda Lovo-De Chavez; Geovanny Ivan Martinez-Morales; Ana Mabel Meza-Martinez; Walter Bladamir Gomez Castillo; and Juan Amaya-Ramirez. The Court further finds that Defendants' Motion for Discovery of the A-File of Thelma Marlene Narvaez should be **GRANTED**.

**I.      BACKGROUND**

Defendant Safety National Casualty Corporation ("Safety National") is a surety certified by the United States Department of Treasury to issue immigration delivery bonds for the benefit of the United States. Defendant AAA Bonding Agency, Inc. ("AAA") is Safety National's agent and co-obligor on the bonds at issue in this action. An alien may use an immigration delivery bond to procure his release from Immigration

and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS"), pending the outcome of deportation proceedings against him. This case is part of a larger dispute between the parties concerning numerous immigration bond breach determinations, including a related case in this Court involving over 1400 bonds. *Safety National Casualty Corp. v. Dep't of Homeland Sec.*, Case No. 05-cv-2159 (S.D. Tex.) ("*Safety National I*"). In that case, pursuant to an Agreed Framework for Alternative Dispute Resolution, the parties presented the Court with a set of fifty sample bonds, and the Court issued three rulings regarding those sample bonds. (*Safety National I*, 711 F. Supp. 2d 697, 705-09 (S.D. Tex. 2008) ("March 2008 Order"); 2010 WL 1849037 (S.D. Tex. May 11, 2009) ("May 2009 Order"); 2010 WL 2219162 (S.D. Tex. May 28, 2010) ("May 2010 Order").)

In the March 2008 Order, the Court held, among other things, that it would review DHS's bond breach determinations under the "arbitrary and capricious" standard pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). 711 F. Supp. 2d at 705-09. The Court found the "no-notice" defense to be valid because the I-352 Bond Contract ("I-352") between the parties allows the obligor and the agent to provide an address and to check one of the following boxes: "Address to use for notice purposes: [ ] Obligor [ ] Agent [ ] Both." The Court determined that "[n]otice of a demand to deliver the alien is a condition precedent to performance, and proper notice, as defined by the terms of the Bond Contract, entails sending the I-340 Notice to Deliver Alien ("I-340") to both addresses." *Id.* at 717. The Court also held that DHS "can only comply with its clearly expressed obligation to provide notice within 180 days by sending [the I-323 Notice of Breach ("I-323")] to both the obligor and the co-obligor if the 'both' box is

checked." *Id.* at 719. The Court remanded 13 bonds based on the "no-notice" defense for failure to send an I-340, an I-323, or each to both Safety National and AAA. *Id.* at 732-33. The Court also remanded an additional bond based on this defense because there was no certified mail return receipt indicating delivery of the I-323 to either Safety National or AAA. *Id.* at 733-34. *Safety National I* is currently on appeal by all parties to the Fifth Circuit.

The instant case was filed by the government in the Western District of Texas and subsequently transferred to this Court. (Doc. No. 18, Order Granting Motion to Transfer.) It concerns breach determinations of ten immigration delivery bonds posted by Safety National, through its agent AAA, between 2000 and 2005. The government and Defendants have each moved for summary judgment, and the Court held a hearing regarding those motions on March 3, 2011.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor. *Id*. Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.  ANALYSIS

The ten bonds at issue in this case fall into four categories. The Court will address each category in turn.

#### A.  Agreed Remand

First, for two bonds—those of William Antonio Gonzalez-Torres and Marcosalem De Oliveira—the parties have agreed that remand to the Administrative Appeals Office is appropriate. Accordingly, the Court remands those two bonds to the agency.

#### B.  Inadequate Notice Under *Safety National I*

Second, for five bonds—those of Gustavo Alvarado-Midence, Paulette Ann Marie McKane, Ana Griselda Lovo-De Chavez, Geovanny Ivan Martinez-Morales, and Ana Mabel Meza-Martinez—the parties agree that, if the Court follows the legal analysis of *Safety National I*, summary judgment for Safety National and AAA will be appropriate. However, the government argues that the Court need not apply its prior ruling to this case because collateral estoppel does not apply, both because this case does not have "virtually identical facts" to *Safety National I* and because an appeal is pending in that case. The Court rejects both of those arguments.

4

"Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170 (1984) ("the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action"). "[M]utual defensive collateral estoppel is applicable against the government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *Id.* at 169.

The Court finds that there are not factual differences here sufficient to bar the application of collateral estoppel. In this case, the government argues that the facts are not "virtually identical" because each bond breach determination has separate and unique facts, and because the I-352 has changed over time. However, the government does not point to any factual differences that are *relevant* in any way to the cases, either in the underlying events or on the bond forms. The Court finds that the facts are virtually identical between the bond breach determinations at issue here and the analogous bond breach determinations ruled on in the March 2008 Order in *Safety National I*, and that any differences are merely superficial.

Nor does the pending appeal in *Safety National I* bar application of collateral estoppel. "The fact that the judgment is now on appeal . . . (where it remains undecided) has no effect on its absolute effect as a bar." *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969) (per curiam); *see also TCA Bldg. Co. v. Northwestern Resources Co.*, 861 F. Supp. 1366, 1374 (S.D. Tex. 1994) ("In both Texas and federal

courts, the doctrine applies even if the prior judgment is under appeal, except in those circumstances (not relevant here) where appeal consists of a trial de novo."); 18A Wright, Miller, & Cooper, Federal Practice and Procedure § 4433 ("The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo."). The government only cites cases from outside the Fifth Circuit, almost all of which rely upon state rather than federal law.[1] The Court must follow clear Fifth Circuit precedent, and accordingly holds that, where the prior order was based on federal law, a pending appeal of that order has no effect on its effect as collateral estoppel.

Because the same legal issue has been litigated by the same parties, and a final judgment has been issued, the government is precluded from relitigating the issues in this case. Moreover, even if collateral estoppel did not apply, the Court remains persuaded by the reasoning in its prior order. Therefore, because notice was not given to both Safety National and AAA, the Court grants Defendants' motion for summary judgment with regard to the five bonds in this category.

### C. Disputed Notice

Third, for two bonds—those of Walter Bladamir Gomez Castillo and Juan Amaya-Ramirez—the parties dispute whether proper notice was sent to both Safety National and AAA. For those two bonds, the government has produced the I-340 and I-

---

[1] The only exception is *In re Baycol Products Litigation*, 593 F.3d 716 (8th Cir. 2010), in which the court stated, "Respondents do not dispute that the next collateral estoppel requirement, finality of the prior judgment, is met. The district court's order was a final judgment disposing of McCollins' individual claims and the class allegations, and it was not appealed within the statutory period." *Id.* at 724. That statement cannot be said to conclusively hold that if the order *had* been appealed, then collateral estoppel would not apply, and is certainly not sufficient to overcome binding Fifth Circuit precedent on the issue.

6

323 notices, which are addressed to Safety National c/o AAA at AAA's Houston address, and which note that a "carbon copy" was sent to Safety National at Safety National's St. Louis address. (Doc. No. 1, Ex. B, at 9-17; Ex. G, at 8-16.) The notices also list a certified mail number and contain a signature confirming receipt of the notice at AAA's Houston address. However, the government has not produced certified mail numbers or signatures confirming receipt by Safety National for the notices.

The government acknowledges that the Mario Humberto Guzman-Serrano bond "had a similar factual scenario" to these bonds. (Doc. No. 29, at 8, 10.) In the March 2008 Order, the Court held that proper notice had not been provided to both Safety National and AAA for the Guzman-Serrano bond, and accordingly remanded that bond. The government now argues, however, that the Court did not consider the facts of the Guzman-Serrano bond in issuing its order, but instead merely included it in a list of other bonds for which remand was appropriate. 711 F. Supp. 2d at 732-33. The government argues that the documentation it has presented is sufficient to show that notice was provided to Safety National for the Gomez Castillo and Amaya-Ramirez bonds. The Court disagrees.

The March 2008 Order and its underlying reasoning make clear that the evidence of notice for these two bonds is insufficient. Even if the Court does not simply follow its previous ruling on the Guzman-Serrano bond, it already ruled on this notice issue with regard to the Maria Nubia Hernandez bond. *Id.* at 733-34. For that bond, where the government had not produced a certified mail number or return receipt, or an affidavit stating that the notice was actually sent by certified mail, the Court rejected the government's argument that a notice letter stating that it was sent by certified mail was

7

sufficient to prove delivery. *See Mulder v. C.I.R.,* 855 F.2d 208 (5th Cir, 1988) ("While it is presumed that a properly-addressed piece of mail placed in the care of the Postal Service has been delivered, no such presumption of delivery exists for certified mail when the requested return receipt is not received by the sender."); *see also Lundy v. United States,* 2007 WL 655756, at *5 (S.D. Tex. Feb. 27, 2007) (finding a "broad judicial consensus on certified mail; specifically, that any presumption in favor of mailing or delivery is destroyed when the sender cannot produce the return receipt").[2]

For the Gomez Castillo and Amaya-Ramirez bonds, the government has not produced certified mail numbers, return receipts, signatures confirming delivery, or affidavits stating that they were actually sent by certified mail to Safety National. Accordingly, for reasons stated in the March 2008 Order, the Court finds that proper notice was not given to both AAA and Safety National. Defendants' Motion for Summary Judgment is therefore granted, and Plaintiff's Motion is denied.

### D. Discovery of A-File

Finally, for one bond—that of Thelma Marlene Narvaez—Safety National and AAA move under Federal Rule of Civil Procedure 56 for discovery of the Alien File ("A-File").[3] At the time of filing of the motion, Rule 56(f) provided:

> **When Affidavits Are Unavailable.** If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>     (1) deny the motion;

---

[2] Government counsel seemed to contend at oral argument that, even if proper notice was not given, Defendants must show prejudice—essentially, that even if notice was insufficient, that was a mere technicality. However, the Court already rejected this argument in the March 2008 Order, finding both that notice was a condition precedent to the contract and that, "[i]n the immigration bond context, failure to provide notice of a demand to produce the alien results in obvious prejudice." 711 F. Supp. 2d at 718.

[3] "An A-file is the file maintained by various government agencies for each alien on record." *Dent v. Holder*, 627 F.3d 365, 368 (9th Cir. 2010). It "contains copies of information regarding all transactions involving an individual as he/she passes through the U.S. immigration and inspection process." 72 Fed. Reg. § 1755-02 (Dep't of Homeland Sec. Jan. 16, 2007) (system of records notice).

8

>> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>> (3) issue any other just order.[4]

The government submitted with its exhibit a number of documents that it refers to as the Record of Proceedings ("ROP"). Those documents are a subset of the total documents that make up Narvaez's A-File. The government contends that the ROP constitutes the entire administrative record because the agency relied only on those documents in ruling on the bond breach and the subsequent appeal. "[T]he focal point for judicial review should be the administrative record already in existence on the basis of which the administrator's determination was made, not some new record made initially in the reviewing court." *Louisiana Environmental Soc., Inc. v. Dole*, 707 F.2d 116, 119 (5th Cir. 1983) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). However, in determining whether agency action was arbitrary and capricious under the APA, the Court may consider certain extra-record evidence, including "when the agency failed to consider factors which are relevant to its final decision" and "when an agency considered evidence which it failed to include in the record." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989); *Shah v. Chertoff*, 2007 WL 2948362, at *6 (N.D. Tex. Oct. 10, 2007) (same); *see also Citizen Advocates For Responsible Expansion, Inc. (I-Care) v. Dole*, 770 F.2d 423, 438 n. 18 (5th Cir. 1985) (allowing supplementation of an inadequate administrative record because, *inter alia*, "a plaintiff who demonstrates that the agency developed an inadequate record should be afforded an opportunity, in essence, to develop that record .").

---

[4] Under the amended Federal Rules of Civil Procedure, effective December 1, 2010, a slightly different version of that provision is contained in Rule 56(d).

Defendants argue that the ROP does not constitute the full administrative record, pointing to the only case that appears to have addressed this issue, *United States v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 728 F. Supp. 2d 1077 (N.D. Cal. 2010). The court in *Gonzales* held that a surety challenging an immigration bond breach determination was entitled to discovery of the entire A-File, subject to any applicable privileges. The court reached this conclusion for two primary reasons. First, the court looked to a DHS Adjudicator's Field Manual ("DHS Manual") that provides that "upon receipt of an appeal in a case over which the AAO, the district or center must review the complete case to determine the appeal" and allows the district or center to "forward either the complete A-file or a complete Record of Proceeding to the AAO." *Id.* at 1094; *see* Doc. No. 27, Ex. G, Excerpt from the DHS Manual. Based on that manual, the court concluded:

> [T]he agency appears to consider the alien's entire A-file upon appeal, even if it eventually forwards only the record of proceedings to the AAO. Moreover, the documents contained within the record of proceedings are a subset of the documents contained with the alien's A-file. Consequently, the creation of the record of proceedings itself would require some review of the A-file itself.

728 F. Supp. 2d. at 1094-95 (citations omitted). Second, the *Gonzales* court found that there were several types of documents that "are generally not made part of the record of proceedings" but might nonetheless be contained in the A-File and "whose mere existence could render the bond-breach determination arbitrary and capricious." *Id.* at 1095. Specifically, the court found, "the A-file may contain, *inter alia*, a voluntary departure bond, letter to the immigration court establishing self-deportation, notice regarding custody of the alien, and documents regarding lawful reentry." *Id.*

In this case, the government contends that the DHS manual was misinterpreted in *Gonzales* because the manual comes from a different component of DHS—Citizenship and Immigration Services—rather than from Immigration and Customs Enforcement ("ICE"). Furthermore, the government argues, the AAO handles dozens of types of administrative appeals, not just bond breach determinations, so the manual's directives about which documents from an A-File are relevant to appeals does not refer specifically to bond breach determinations. Finally, the government argues, the phrase "the complete case" used in the manual does not refer to the complete A-File, but rather to those documents considered by the official making the bond breach determination.

DHS regulations provide that the ICE official who made the initial bond breach determination also reviews the administrative appeal and then forwards the appeal the "related record of proceeding" to AAO. 8 C.F.R. § 103.3(a)(2). The Court agrees with the *Gonzales* court that the DHS Manual at least *suggests* that the entire A-File is used in some way in the bond breach proceeding. For example, because the initial ICE reviewer must possess the A-File in order to select and remove the documents that he passes along to AAO, and because the manual gives him the option of providing "the complete A-File" to AAO, it appears that the A-File is before the agency official who makes the bond breach determination and the initial review of the appeal. However, for the reasons argued by the government, the DHS Manual is not conclusive proof that the entire A-File is used in the bond breach determination, and the Court need not decide on that basis.

The government does not dispute that, as the *Gonzales* court identified, there are several types of documents that may be contained in an A-File but not in the ROP that could be dispositive of the bond breach determination. Indeed, after the government

11

provided Defendants with the A-Files for the fifty sample bonds in *Safety National I*, the Court subsequently found inadequate notice for several bonds based on documents that Defendants found within the A-Files. Instead, the government argues that, in this case, Defendants have no evidence that such documents exist in the Narvaez A-File. However, Defendants could not be expected to have affirmative evidence of any such documents because the government has never given Defendants access to the A-File. The Court finds that it would be unjust and inappropriate to present Defendants with such a catch-22.

If the agency considered the entire A-File during the administrative proceedings, as seems likely, then the complete file should be properly included in the administrative record. *See Esch*, 876 F.2d at 991; *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) ("review is to be based on the full administrative record that was before the Secretary at the time he made his decision"). Even if the agency did not in fact consider the entire A-File during the administrative proceedings, the Court finds that the potential presence of the types of documents identified by the *Gonzales* court (along with others that would be determinative of whether the bond was breached) is a "relevant factor" to the agency's final decision. *See Esch*, 876 F.2d at 991. Accordingly, the Court finds it necessary and appropriate to grant Defendants discovery of the entire Narvaez A-File before the Court grants the government's Motion for Summary Judgment.

As in *Gonzales*, production of the A-File is subject to all relevant privileges. 728 F. Supp. 2d at 1095-96. The Court hopes that the parties will reach an agreement regarding an appropriate protective order and whether certain types of documents from the A-File need not be produced. The government's Motion for Summary Judgment on

the Narvaez bond is denied without prejudice to refiling after Defendants have had an opportunity for discovery of the A-File.

## IV.   CONCLUSION

For the reasons described in this Order, with respect to the bonds for William Antonio Gonzalez-Torres; Marcosalem De Oliveira; Gustavo Alvarado-Midence; Paulette Ann Marie McKane; Ana Griselda Lovo-De Chavez; Geovanny Ivan Martinez-Morales; Ana Mabel Meza-Martinez; Walter Bladamir Gomez Castillo; and Juan Amaya-Ramirez, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 27) and **DENIES** the government's Motion for Summary Judgment (Doc. No. 5) Those bonds are hereby **REMANDED** to the agency for further consideration not inconsistent with this opinion.

With respect to the bond for Thelma Marlene Narvaez, the Court **GRANTS** Defendants' Motion for Discovery of the A-File and **DENIES WITHOUT PREJUDICE** the government's Motion for Summary Judgment.

**IT IS SO ORDERED**.

**SIGNED** this 17th day of March, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE